ZELDA M. GRAYBILL, Appellant, v. JOHANNA BROWN et al., Appellees.

**DEATH:** **Burden of Proof in re Survivorship.** Survivorship is an affirmative proposition, and must be proved by the person asserting it. Evidence attending the death of a husband and wife in the same wreck reviewed, and held insufficient to establish that the wife survived the husband.

*Appeal from Harrison District Court.*—O. D. WHEELER, Judge.

SEPTEMBER 19, 1922.

THIS case, as finally presented, represents a consolidation of certain proceedings in the district court, involving the estate of John L. Brown, deceased. Brown and his wife were killed in the same accident. The main issue in the case is: Did the wife outlive her husband for a momentary period of time? Brown was survived by his mother, Johanna Brown, as his only heir. Mrs. Brown was survived by her daughter, Zelda M. Graybill, as her only heir. The daughter, as plaintiff herein, claims, as heir of her mother, the statutory share of the estate of Brown which her mother took as the surviving spouse of her husband. The trial court dismissed the plaintiff's petition, and she has appealed.—*Affirmed.*

*Roadifer & Roadifer* and *Milchrist, Scott & Pitkin,* for appellant.

*H. L. Robertson, C. W. Kellogg,* and *A. Leonard Guitar,* for appellees.

EVANS, J.—Mr. and Mrs. Brown were married on August 15, 1918, at St. Joseph, Missouri. Immediately after the ceremony, they occupied an automobile, in company with Mr. and Mrs. Kirschner, and proceeded to drive to a near-by destination. While crossing an interurban railway, they were struck by an interurban car, with the result that all four occupants were killed. Mrs. Kirschner was extricated from the wreck while still living. She was put in an ambulance, and died therein on the way to the hospital. The other three occupants were dead when extricated, as contended by defendant; whereas it is contended by plaintiff that Mrs. Brown was still alive, and did not expire for 15 or 20 or more minutes thereafter. Concededly, the men were both dead when their bodies were extricated. The bodies of all were crushed and greatly mutilated. In the collision, the automobile was carried down the track by the interurban car for a distance of about 70 feet. When the car had been stopped, the bodies of the occupants were pinned under the automobile, and the automobile was pinned under the interurban car. The car was backed away from the wreck immediately. But in order to extricate the bodies from under the automobile, it became necessary to obtain timbers, and some time was consumed in so doing. With the use of these timbers, it was necessary to lift the car, in order to extricate the bodies.

The defendants named are Fred Brown, as administrator of the estate of his brother, John L. Brown, and Almor Stern, as administrator of the estate of Sarah Graybill Brown. As between the latter and the plaintiff, there is no controversy. Subsequent to the beginning of this action, there was a purported settlement between the plaintiff and Fred Brown, whereby the plaintiff received the sum of $2,500 in compromise of her claim. Afterwards, she repudiated the settlement, and proceeded with her action. The settlement was pleaded against her. She pleaded in avoidance that it was obtained by fraud and undue influence. By stipulation of the parties, the issue of survivorship and the issue of fraud in the settlement were tried together, and the cause was transferred to the equity side for that purpose. It will be seen that the issues between the parties are wholly issues of fact. No disputed legal proposition is involved. The nature of the issues is such that a finding for the

defendant upon either one becomes decisive as to both. That is to say, if survivorship be not proved, the plaintiff's case must necessarily fail, regardless of the question of settlement or of fraud therein. On the other hand, if the alleged fraud in the settlement be not proved, then such settlement would be a complete defense to plaintiff's action, regardless of the question of survivorship. The trial court found against her on both issues.

It is conceded by counsel on both sides that no presumption obtains at common law on the question of survivorship, where two or more persons perish in the same disaster. Survivorship, however, is an affirmative proposition, and must be proved like any other fact by the person asserting it as the basis of his claim. It is incumbent, therefore, upon the plaintiff herein to prove, by a preponderance of the evidence, that Mrs. Brown did survive her husband.

Seven witnesses testified on behalf of the plaintiff that they observed or detected signs of life for 15 or 20 or more minutes after Mrs. Brown was extricated from the wreck. These alleged signs were described in the main as "breathing," "twitching," "gurgling," "quivering." One witness called it a "dying quiver." A still greater number of witnesses who were present giving aid, and who had substantially equal opportunity for observation, testified on behalf of the defendant that they saw no signs of life, and that they believed Mrs. Brown to be dead when extricated. Mrs. Brown's chest bones were crushed; likewise, her abdomen and her hip; and her skull was fractured.

The brief for appellee imputes bad faith and evil motives to the witnesses for the plaintiff, and evil methods to the plaintiff and her advisers in the obtaining of the testimony. The record before us does not warrant the imputation against the good faith of these witnesses. Still less does it warrant imputations against the plaintiff or against those representing her. Though we find against the plaintiff on the weight of the evidence, we do so without any reflection upon the candor of her witnesses. The undisputed fact that some of these witnesses asserted their belief at that time that life was not extinct, is indicative of their present candor in so testifying. When the doctors came upon the scene, after 20 or 30 minutes, some of these witnesses were contending then that life was not extinct. Whatever the

infirmity in this testimony, therefore, it cannot fairly be said that it was *consciously* untrue. The argument for the plaintiff is, in part, that the testimony of her witnesses should be deemed preponderant, because they were testifying to an affirmative fact, whereas the testimony of the witnesses for the defendant was purely negative; that, therefore, if the testimony of plaintiff's witnesses was not true, they were necessarily conscious perjurers. We have already defended them against this latter imputation. If the alleged fact to which they testified had been ascertainable unmistakably by mere observation, the argument would have its force. It is a mistake, however, to assume that such was the nature of their testimony. On the contrary, the fact which was sought to be ascertained by them, and to which they testified, was so uncertain and so difficult of sure discernment by observation that the best that any witness could do was to form his own opinion thereon. It is true that the opinion and judgment of the observer usually enter, in some degree, into much of all ascertainment of facts. But in the case before us, this is *pre-eminently* so. Ordinarily, life and death are readily distinguished, beyond the possibility of doubt. But here we have a crushed human body which has received its death blow. There is neither speech nor consciousness. The spirit has either crossed the line between life and death or is rapidly doing so. One witness looks upon it and hopefully believes that he sees signs of life still flickering therein. Another witness looks upon it and despairingly believes otherwise. We deem it clear that the testimony of these witnesses on the question of the lingering life must be deemed, pro and con, *opinion evidence,* in a predominating sense. One of the witnesses for the plaintiff came upon the scene with one of the doctors. He testified to his opinion that Mrs. Brown was still alive, in that he saw the alleged signs of life. But the doctor, a police surgeon, made a careful examination with a stethoscope, and found otherwise. A few minutes later, another doctor made another examination, with the same result. One of these doctors was used as a witness by the plaintiff, and one by the defendant. Both testified that the patient had probably been dead an appreciable time. The body was already cold. Both testified also that the nature of the injuries indicated instantaneous death as a probability.

Though the home of Mr. Brown was at Logan, Iowa, Mrs. Brown had recently lived in the neighborhood of the place of the accident. Several of these witnesses for plaintiff were her former acquaintances and friends. It was quite natural that they should hope desperately for the best, and that their opinion or judgment might be influenced in some degree by their hopes. When it is considered that their opinion ran counter to that of the doctors, who were so quickly upon the scene, and counter to the observation and experience of ten other witnesses who were present, it will be seen how difficult it would be to find that the evidence for the plaintiff preponderates over that for the defendant. All the witnesses for the defendant appear to be disinterested. They all came upon the scene spontaneously. They include the conductor and motorman and passengers of the interurban car. The conductor was under duty to make an immediate report to his superiors, and he made an immediate investigation and report. Upon a full consideration of all the evidence before us, we find ourselves unable to say that the evidence for plaintiff is preponderant over that for the defendant. We are not able to say that the survivorship is affirmatively proved. If there were any burden upon the defendant to prove the contrary in an affirmative sense, we might also have difficulty to say that the evidence for the defendant was preponderant. In our consideration of the evidence, we have not overlooked the fact that some of the important witnesses for the plaintiff fixed the time of expiration of life at a few minutes before the arrival of the doctors. The most that can be judicially affirmed is that the question of fact is left in great uncertainty. In view of our agreement at this point with the conclusion of the trial court, no useful purpose can be subserved by a more detailed discussion of the evidence. The foregoing sufficiently indicates the general ground of our conclusion.

In view, also, of this conclusion, there is no occasion for any consideration on our part of the question of fraud in the settlement. It is not to plaintiff's interest to press such issue, except as she might be successful upon both issues. The decree below is, accordingly,—*Affirmed.*

STEVENS, C. J., FAVILLE and DE GRAFF, JJ., concur.